## CONTROL DATA CORPORATION v. METRO OFFICE PARKS COMPANY.

208 N. W. 2d 738.

June 1, 1973—No. 43885.

*Oppenheimer, Brown, Wolff, Leach & Foster, John D. Healy, Jr.,* and *John H. Wolf,* for appellant.

*Haverstock, Gray, Plant, Mooty & Anderson, Robert E. Bowen,* and *John S. Crouch,* for respondent.

Heard before Knutson, C. J., and Peterson, Todd, and Mac-Laughlin, JJ.

PER CURIAM.

Plaintiff Control Data Corporation, tenant of defendant Metro Office Parks Company, appeals from a judgment ruling that Control Data's extension of a certain lease was binding and that Control Data was not entitled to any offset of rent indebtedness for alleged savings for unused space. We affirm.

Control Data leased about 61,000 square feet of office space in Bloomington, Minnesota, from Metro under two leases. Each lease granted Control Data the option to extend the lease for a 5-year period. If either lease were extended, Control Data could terminate the extended lease on 12 months' notice.

To understand this appeal, it is necessary to discuss former related litigation and the facts leading up to that litigation. Sometime subsequent to the execution of the original leases, Control Data and Metro entered into a supplementary agreement which amended the two leases so as to place a 25,000-square-feet-per-year limit on Control Data's right to vacate the space leased from Metro. Because Control Data later constructed its own office building, it did not desire to extend either lease, but instead undertook to return the whole of the approximately 61,000 square feet of leased office space to Metro upon expiration of the initial terms of the leases. As a result, the supplementary agreement became the subject of litigation. In that litigation, Control Data contended that the 25,000-square-feet limitation applied only at the termination of an *extended* lease. Metro contended that the limitation also applied at the expiration of the *original* term of each lease even if not extended. The trial court reformed the amending agreement to place a 25,000-square-feet-per-year limitation on Control Data's right to vacate, *both* when either of the original leases expired and when an extended lease was terminated. The trial court's order provided that Control

Data was a month-to-month tenant as to those areas which it could not vacate because of the 25,000-square-feet limitation and that the month-to-month tenancy could be terminated by either party on 1 month's written notice with the qualification that Control Data could not vacate more than 25,000 square feet in any 12-month period. Control Data appealed to this court, and we affirmed the trial court's decision. Metro Office Parks Co. v. Control Data Corp. 295 Minn. 348, 205 N. W. 2d 121 (1973).

In the interim between the trial court's decision and our decision in that former litigation, Control Data faced a dilemma which ultimately led to this litigation and appeal. Since Control Data had constructed its own office building, it had no use for the space it could not vacate. Further, Metro's right to terminate on 1 month's notice[1] made the space very difficult to sublease because the sublessees felt insecure as to the duration of their lease. Accordingly, after the trial court's decision in the former litigation, Control Data moved the trial court to grant interlocutory relief so the space could be more easily subleased during the pendency of the appeal. When the trial court denied that motion, Control Data exercised its option to extend one of the leases,[2] stating that the extension was conditional on the outcome of the previous appeal to this court. Control Data then subleased some of the space which was covered by the extended lease. Although Control Data paid the sublease income over to Metro, it did not pay rent to Metro on the unused space not subleased. As a result, Metro threatened to evict Control Data's subtenants. Control Data then sought injunctive relief by bringing the instant action to enjoin Metro from disturbing its subtenants. Control Data alleged that its extension of the lease was conditional on the outcome of the appeal taken in the first action; and that if it paid

---

[1] Metro had this right because, under the trial court's decision, Control Data was a month-to-month tenant as to those areas it could not vacate because of the 25,000-square-feet limitation.

[2] The other lease, which was not extended, is not in issue on this appeal.

rents on unused space and later prevailed in the pending appeal, refund of the rents so paid would be unsecured. Metro counterclaimed for the unpaid rents on unused space. Control Data replied that, among other things, any unpaid rents should be offset by savings enjoyed by Metro because certain services were no longer required for the unused space.

Prior to the trial court's decision in the instant action, Control Data was given the equivalent of the injunctive relief it sought by agreement of the parties. As to the remaining issues, i.e., whether there was a binding extension by Control Data of the lease and whether Control Data was entitled to an offset on the rent because of savings to Metro on the unused space, the trial court found that the extension was binding and that Control Data was not entitled to any offset of rent for alleged savings for unused space. Control Data then brought this appeal.

1. Under the trial court's order in the first action, Control Data was a month-to-month tenant as to those areas it could not vacate by reason of the 25,000-square-feet-per-year limitation, and the tenancy as to those areas could be terminated on 1 month's notice subject to the qualification that Control Data could not vacate more than 25,000 square feet in any 12-month period. The trial court found in the instant case, however, that, since Control Data extended the second lease, the tenancy was governed by the written terms of that lease and thus could be terminated only on 12 months' notice.

Control Data contends that it should be able to vacate the extended lease on 30 days' notice rather than 12 months' notice as provided by the lease. We find no merit in the arguments made by Control Data in support of that contention. When faced with a business decision whether to extend the lease or take a chance on winning their first appeal, Control Data chose to extend the lease "conditionally." It appears the condition was that if Control Data lost the former appeal, the lease was extended; if Control Data won the former appeal, the lease was not extended. Control Data lost the former appeal. The bulk of the briefs in

this case—which were filed before our decision in the former appeal—is devoted to the issue of the validity of Control Data's placing a "condition" on the lease extension. That issue was made moot by this court's decision against Control Data. Whatever the merits of that issue, Control Data is now bound by the written terms of the lease it chose to extend. Since the lease requires 12 months' notice, the trial court properly found that Control Data can terminate the extension only upon 12 months' notice.

2. Control Data contends that its rent liability should be reduced by the amount of any savings resulting to Metro because the leased space is unused. Whether Control Data's rent obligation should be so reduced is somewhat analogous to whether Metro, as landlord, must mitigate damages. In Minnesota, landlords are under no obligation to mitigate damages after a tenant abandons leased premises. Gruman v. Investors Diversified Services, Inc. 247 Minn. 502, 78 N. W. 2d 377 (1956); Poboisk v. Colon, 292 Minn. 451, 195 N. W. 2d 431 (1972). Similarly, we believe that a tenant who abandons leased premises has no right to a reduction in rent for savings which accrue to the landlord as a result of the abandonment. Therefore, the trial court properly found that Control Data was not entitled to any offset for savings resulting from unused space.

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.